NELLIE M. PATTON *v.* CONTINENTAL CASUALTY COMPANY.

(*Knoxville.* September Term, 1907.)

1. **INSURANCE COMPANIES.** Action by nonresident against a nonresident casualty company, by service of process.

A nonresident of this State may prosecute a suit in our courts against a nonresident casualty company, lawfully doing business here, on a policy written outside of this State, though the accident and death of the insured both occurred in another State, if proper service of process is made here. (*Post, pp.* 366-375.)

Cases cited and approved: State, ex rel., v. Telephone & Telegraph Co., 114 Tenn., 194, 200; Whitlow v. Railroad, 114 Tenn., 344; Johnston v. Insurance Co., 132 Mass., 432; Abbeville, etc., Co. v. Western, etc., Co., 85 Am. St. Rep., 922, and citations on page 372; State v. Land Co., 106 La., 621.

2. **SAME.** Acknowledgment of service of process against foreign life insurance company is as binding as actual service thereof.

Under a statute (Shannon's Code, sec. 3292, subsec. 3) requiring every foreign life insurance company doing business in this State to appoint the insurance commissioner its attorney, upon whom legal process may be served, and providing that service upon such officer by the proper officer of the county in which the commissioner may have his office shall be deemed a sufficient service on the insurance company, an acceptance or acknowledgment of service of process by the insurance commissioner is sufficient to bring the company before the court. (*Post, pp.* 372-374.)

Code cited and construed: Sec. 3292, subsec. 3 (S.).

Patton v. Casualty Co.

3. **SAME.** Process in suit of nonresident against nonresident insurance company may be served on insurance commissioner until power is properly revoked.

Under a statute (Shannon's Code, sec. 3292, subsec. 3) providing for the appointment of the insurance commissioner to be served with process against foreign insurance companies, and providing "that the authority thereof shall continue in force, irrevocably, as long as any liability of the company remains outstanding in this State," the liability of the insurance company is not limited to suits on contracts or obligations arising in this State, so long as the power remains unrevoked, though it might be revoked, if the insurance company had no obligations outstanding in this State. (*Post, pp.* 372-374.)

Code cited and construed: Sec. 3292, subsec. 3.

4. **SAME.** Policy does not lapse where premium is deposited according to agreement, but payment is refused by depositary after death of insured; premium deducted.

Where, in accordance with the agreement as to the method of payment, the premiums were placed with the railroad company for which the insured worked, and were properly there at the time of the insured's death, and when the insurance company made demand under the agreement, but the railroad refused payment on the ground that the deceased insured was no longer in its service, though it had the money in its hands, the policy did not lapse, and the insurance company could claim only a deduction of the amount of the current premium. (*Post, pp.* 366, 367, 375.)

FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.—HAL H. HAYNES, Chancellor.

HARR & BURROW, for complainant.

KIRKPATRICK, JOHNSON & MILLER, for defendant.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

The defendant is a private corporation having its principal office and place of business in the city of Chicago, State of Illinois. Harry L. Patton obtained from defendant a policy of insurance on his life bearing date August 23, 1905. He was at that time a freight brakeman on the Norfolk & Western Railroad, remaining in the service of that company in that capacity until the date of his death, November 10, 1905.

The policy provided on its face for the payment of a weekly indemnity of $10 in the event the insured should be injured while the contract was in force, and for the payment of the full amount of $1,000 in the event of the death of the said Harry L. Patton.

After the death of the insured, notice was given and the proof required to be made by the terms of the policy was made and delivered to the defendant. The defendant refused to pay on the ground that at the time of the death of the insured he was in default in the payment of premiums. Thereupon the present suit was brought by his mother, the beneficiary in the policy, claiming to be a resident of Tennessee.

The defendant filed a plea in abatement and also an answer.

The plea in abatement stated the following as a matter of abatement:

"The complainant is not a resident of the State of Tennessee, nor was she at the time of filing her bill, but was a nonresident thereof; and defendant is a nonresident foreign corporation, and has no local agent or officer in Washington county. This suit is brought to collect the amount of an insurance policy, which policy was written beyond the limits of this State. The insurer, or this respondent, the insured, Harry L. Patton, and the beneficiary, the complainant in the bill, were all at the time nonresidents of and beyond the limits of this State, and the accident which caused the death of the insured, Harry L., occurred in another State, and his death resulting there. Therefore this respondent is not suable in this State, and was only brought here before the court by substitute service of process on Reau E. Folk, insurance commissioner for this State, residing in Nashville, the seat of government, and respondent says that this court ought not to take further jurisdiction of the cause."

The answer filed set up as a defense substantially that the insured was in arrears on his premiums when the accident occurred, and the policy had been forfeited. The plea was set down for argument as to its sufficiency, and was sustained by the chancellor. Thereupon the complainant took issue upon the plea, and an agreement was filed by the parties, to the effect that at the time the suit was brought the insurance company had been doing

business in Tennessee for more than a year, and was then doing business, and that it had appointed Reau E. Folk, the commissioner of insurance, as its agent to accept service of process.

Evidence was also introduced by the complainant for the purpose of showing that she was, at the time the suit was brought, a resident and citizen of Tennessee, and there was proof to the contrary introduced by the defendant.

Evidence was also introduced by both sides as to the merits of the controversy.

The chancellor decreed in favor of the complainant, rendering a judgment for $1,094, and from this judgment the defendant appealed to this court and has here assigned errors.

It is insisted for complainant that when the fact was admitted that the defendant was doing business in Tennessee, and had appointed the insurance commissioner as its agent to accept service of process, the plea in abatement became immaterial. As we understand the position, it is that the plea in abatement was probably good upon its face, and properly sustained by the chancellor, but that, when this new matter was brought forward under the replication to the plea, it was shown that Mr. Folk was properly the agent of the insurance company, and might be served with process.

Without passing upon the technical aspect of the matter thus presented, we think the question is open for consideration whether a nonresident holder of an insurance

policy may sue a foreign insurance company in this State, by having the insurance commissioner to accept service of process.

It is observed that in this state of the question we have assumed that Mrs. Patton was, at the time the suit was brought, a nonresident of the State. In the view we take of the case it is unnecessary that the point shall be determined on the evidence. It suffices simply to treat her as if she were a nonresident suing. The policy of insurance was obtained by the insured in West Virginia, and he was killed there. At the time it was so procured, the mother of the insured was a resident and citizen of North Carolina.

It has long been the custom in this State to permit suits against foreign companies for torts committed outside of this State. *Whitlow* v. *N. C. & St. L. Ry. Co.*, 114 Tenn., 344, 84 S. W., 618, 68 L. R. A., 503, and cases cited. In *State, ex rel.*, v. *Telephone & Telegraph Co.*, 114 Tenn., 194, 200, 86 S. W., 390, the general proposition is stated that the admission of a foreign corporation to do business in this State is a matter of comity, and not of right, so that, when such corporation enters the State and undertakes to do business here, it becomes amenable to our laws and subject to the jurisdiction of our courts, exactly as a private individual or domestic corporation.

It has always been the custom in this State to permit suits upon contracts, regardless of the place of the cre-

119 Tenn.—24

ation of the contract. In 6 Thompson on Corporations, section 8004, after stating certain cases holding that suits could not be brought by nonresident persons or corporations against foreign corporations upon contracts made and to be performed outside of the State of the forum, although the foreign corporation had an agent in the State on whom the process might be served, the author said:

"Contrary to the foregoing, there are holdings to the effect that when a corporation comes within the State for the purpose of doing business, and appoints an attorney or agent on whom process against it may be served with like effect as if it existed in the State, it may be sued by nonresidents upon contracts made outside of the State in like manner as a natural person may be sued. This view of the law enlarges the operation of statutes under which foreign corporations subject themselves to the jurisdiction of domestic tribunals, so as to give such tribunals jurisdiction over them in respect to all actions, and for all purposes, as corporations."

In the case of *Johnston* v. *Trade Ins. Co.*, 132 Mass., 432, referred to in the notes to the section just quoted, it was held that a citizen of Delaware could maintain in a court of Massachusetts, an action against a corporation created under the laws of New Jersey, upon a policy of insurance issued in Pennsylvania upon property in Delaware, and payable to the plaintiff as mortgagee; the New Jersey insurance company having complied with the statutes of Massachusetts entitling it to do bus-

iness in that State, by appointing the insurance commissioner of the State its attorney, "upon whom lawful processes, in any action or proceeding against the company, may be served with like effect as if the company existed in this commonwealth," and being actually engaged in business within the State of Massachusetts at the time of the commencement of the suit. ·

In a note to *Abbeville, etc., Co.* v. *Western, etc., Co.,* 85 Am. St. Rep., 922, it is said:

"The question of jurisdiction is not dependent on the cause of action arising within the State or nation in whose courts redress is sought, nor upon the plaintiff's being a citizen or resident thereof, unless, indeed, some statute makes that question material and controlling. Therefore, if a foreign corporation has placed itself in a position where process issued by the courts of a State or nation can be lawfully served upon it, and such service is made within the territorial limits of the State or nation, its courts are competent to proceed, though the cause of action did not arise within its limits, unless its constitution or statutes prohibit, or, at least, do not sustain, such proceeding. Process having been regularly served upon a foreign corporation, it cannot, any more than when the defendant is a nonresident natural person, defeat the action on the ground either that the plaintiff is a nonresident, or that his cause of action depends on a transaction occurring in another State or country; and this rule is equally applicable, whether the action is for a tort committed, or a contract entered into, beyond the

jurisdiction"—citing *Williams* v. *Pope Mfg. Co.,* 52 La. Ann., 1417, 27 South., 851, 50 L. R. A., 816, 78 Am. St. Rep., 390; *Johnston* v. *Trade Ins. Co.,* supra; *Pullman Palace Car Co.* v. *Lawrence,* 74 Miss., 782, 22 South., 53; *Mutual Life Ins. Co.* v. *Nichols* (Tex. Civ. App.), 24 S. W., 910; *United States* v. *Southern Pac. Ry. Co.* (C. C.), 49 Fed., 297; *Gilbert* v. *New Zealand Ins. Co.* (C. C.), 49 Fed., 884, 15 L. R. A., 125; *Denver, etc., R. R. Co.* v. *Roller,* 41 C. C. A., 22, 100 Fed., 739, 49 L. R. A., 77; *Barrow S. S. Co.* v. *Kane,* 170 U. S., 100, 18 Sup. Ct., 526, 42 L. Ed., 964. See, also, 19 Cyc., 1341, note 66, and cases cited; Clark on Corp. (2d Ed.), p. 630, note 126, and cases cited.

Referring to our statutes which bear specially upon the matter in hand, it is provided, in the requisites for obtaining the right to do business in this State by a foreign insurance company, among other things, that "it shall satisfy the insurance commissioner that it is fully and legally organized under the laws of its State or government to do the business it proposes to transact; that, if a life insurance company, it has on deposit with the treasurer of this State, or with the proper officer of some other State, securities to the actual cash value of at least one hundred thousand dollars, consisting of the bonds of this State, the United States, or the State in which such company is organized, or notes or bonds secured by mortgages on real estate for double the amount, and such companies shall file with the insurance commissioner the certificate of the official with

whom the securities are deposited, stating the time and amount of each of said bonds, notes, or stocks, and that he is satisfied that they are worth one hundred thousand dollars, and that the deposit is made with him by the company for the protection of all policy holders and creditors in the United States. It shall, by duly executed instrument filed in his office, constitute and appoint the insurance commissioner, or his successor, its true and lawful attorney, upon whom all lawful processes in any action or legal proceeding against it may be served, and therein shall agree that any lawful process against it, which may be served upon its said attorney, shall be of the same force and validity as if served on the company, and that the authority thereof shall continue in force, irrevocably, as long as any liability of the company remains outstanding in this State. Any process issued by any court of record in this State, and served upon such commissioner by the proper officer of the county in which said commissioner may have his office, shall be deemed a sufficient process on said company, and it is hereby made the duty of the insurance commissioner, promptly, after such service of process by any claimant, to forward, by registered mail, an exact copy of such notice to the company." Shannon's Code, section 3292, subsecs. 2, 3.

In the present case the service of process was acknowledged by the insurance commissioner, and on the principles already stated we are of the opinion that the service

was properly made, and the company was brought before the court.

Special remark is made by counsel for the defendant upon the language in subsection 3, "that the authority thereof shall continue in force irrevocably, as long as any liability of the company remains outstanding in this State." It is argued from this provision that it was intended to limit the liability of the insurance company to suit on contracts or obligations arising within this State. We do not think this construction is sound. It is true that under this provision the insurance company, if it had no obligations outstanding in this State, might revoke the power of the insurance commissioner; but so long as the authority remains unrevoked the insurance commissioner stands as the representative of the insurance company for the purpose of serving process on all rights of action on which the company is amenable to suit. The limitation is not in respect of the kinds of suits which may be brought, but marks only the power of the insurance company to revoke the agency for all purposes.

The question arose in Louisiana in the case of *State* v. *North American Land Company,* 106 La., 621, 31 South., 172, 87 Am. St. Rep., 309-325, as to the right of a nonresident to sue upon a foreign cause of action, and it was held as we hold it here.

We are of the opinion, therefore, that, even treating the complainant as a nonresident at the time she brought her suit, it might be well maintained by her if her case,

upon the merits, be made out.

The merits of this controversy are with complainant. No extended discussion is needed upon this part of the litigation.   It is sufficient to say that we find from the testimony that, under the method of payment agreed upon between the parties, the insured had fully complied with his duty.   The money was to be placed in the hands of the railway company, to which the insurance company was to resort for payment.   The money was so placed before the death of the insured, and was there at the time he was killed.   At the time of his death the payment was not yet due, under the course of business theretofore practiced between the insurance company and the railway company.   Demand was made upon the railway company by the insurance company for payment of the premium, but the railway company had until the 24th of November to pay.   In the meantime, on the 10th of the month, the insured had died.   On the 24th the railway company, although the money was then in its hands, refused to pay on the ground that the deceased was no longer in its service.   The policy matured at the death of the insured.   The rights of the beneficiary could not, therefore, be defeated by the conduct, just referred to, of the railway company.   All that the insurance company can claim on these facts is a deduction of the amount of the current premium from the sum due on the policy. The chancellor allowed this.

There is no error in the decree of the chancellor, and it must be affirmed.